**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
|    Dewey Commercial Investors, L.P., | : | |
| Debtor. | : | Bankruptcy No. 13-17294-MDC |

# <u>MEMORANDUM</u>

**By: MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE**

<u>INTRODUCTION</u>

      Before this Court for consideration is LEI SS Investor LP's (the "Movant" or "LEI SS") Motion for (i) Dismissal of Chapter 11 Case Pursuant to 11 U.S.C. §1112 or, (ii) alternatively, Relief from Automatic Stay Pursuant to 11 U.S.C. §362 (the "Motion"). LEI SS requests that the Court dismiss the Chapter 11 case of the Debtor, Dewey Commercial Investors, L.P. (the "Debtor" or "Dewey") pursuant to 11 U.S.C. §1112(b) for cause including that the petition was filed in bad faith. In the alternative, the Movant requests relief from the automatic stay pursuant to 11 U.S.C. §362(d) to permit it to cause the transfer of the Debtor's 79.52% Class B limited partnership interest in DCI-Station Square, L.P. (the "Partnership"). As set forth in its Objection dated October 7, 2013 (the "Objection"), the Debtor opposes dismissal arguing that it seeks Chapter 11 relief to enable it to "reorganize its affairs" and to avoid "the attendant distraction of legal action over the transfer of the [Partnership Interest]." Objection, ¶¶45 & 52. Following a hearing on the issues and consideration of the evidence, this Court will grant the Motion and enter an Order dismissing the Debtor's bankruptcy case as a bad faith filing involving a two party dispute and filed without a valid bankruptcy purpose.[1]

<u>PROCEDURAL HISTORY</u>

      On August 21, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code") (the "Chapter 11

---

[1] In light of the Court's determination that dismissal of the Debtor's bankruptcy case is warranted, the Court will not address the Movant's request for relief from the automatic stay imposed by 11 U.S.C. §362.

Case"). A week later, the Debtor filed its schedules. The Debtor's schedules reveal that it owns no real estate. It lacks secured creditors and any creditors who may hold unsecured priority claims. The Debtor only identifies one unsecured creditor, the Movant, on its List of Creditors Holding 20 Largest Unsecured Creditors. The Debtor scheduled the Movant as the holder of a disputed claim in the amount of $8,974,636.00.[2]

As of the date of the hearing on the Motion, three creditors had filed proofs of claim. On September 24, 2013, PECO Energy Company filed a claim in the amount of $210.82 relating to unpaid utility bills. On October 11, 2013, SGS Concrete, Inc. filed a claim in the amount of $126,758.84 relating to goods sold to the Debtor. Finally, on October 14, 2013, the Movant filed a claim for an unliquidated amount that is alleged to be not less than $7,792,000.00 relating to the Movant's damages resulting from the Debtor's alleged prepetition breach of a partnership agreement. According to the Debtor's claims register, the Debtor's total indebtedness is $7,918,969.66 of which 98.4% is owed to the Movant.

The Debtor's property interests are similarly limited. The Debtor's schedules identify five assets: (1) a commercial checking account with a balance of $375.00; (2) a 2012 New Jersey state tax refund in the amount of $2,960.00; (3) an executory management contract with Dewey Commercial Management, L.P.; (4) a 99.00% limited partnership interest in Dewey Commercial Management, L.P.; and (5) a 79.52% Class B limited partnership interest in the Partnership (the "Partnership Interest"). The Debtor states that the total value of these assets is worth $7,795,336.00. Of this amount, $7,792,000.00, or 99.96% of the Debtor's assets, is attributable to the Partnership Interest.

On September 20, 2013, the Movant filed the Motion. The Movant sought dismissal of the Chapter 11 case on the grounds that (1) the Debtor filed its Chapter 11 petition in bad faith and solely for the improper purpose of preventing the transfer of the Partnership Interest, rather than to maximize value for creditors of the Debtor's estate, (2) the Debtor will not be able to satisfy the plan confirmation requirements of §1129 of the Bankruptcy Code, and (3) the Chapter 11 case constitutes a two-party

---

[2] This Court notes that the Debtor's Schedule F also identifies Cozen O'Connor as an unsecured creditor; however the Debtor does not list the amount of that claim.

2

dispute between the Movant and Debtor. The Debtor filed its Objection asserting that "[t]he dispute between the Debtor and the Movant involves more than two parties…" Objection, ¶54. With regard to the Debtor's opposition to the Movant's request for relief from the automatic stay, the Debtor contends that relief should be denied on the grounds that it holds significant equity in the Partnership Interest and that the Partnership Interest is necessary for an effective reorganization. Objection, ¶128.

On October 15, 2013, the Court held a hearing on the Motion. At that time, the Movant presented evidence in support of both its request for dismissal and its request for relief from the stay. The Movant presented the testimony of John Gaghan, the Movant's Vice President. Mr. Gaghan testified regarding, among other things, the Movant's financial dealings with the Partnership and the Debtor, the parties' dispute relating to the Partnership Interest, and the status of the Movant's efforts to transfer the Partnership Interest from the Debtor to Movant.

In support of its Objection, the Debtor presented the testimony of John Dewey. Mr. Dewey is the Managing Member of the Debtor's General Partner, Dewey Commercial Investors, LLC. Mr. Dewey testified regarding the value of the Partnership Interest, the Debtor's equity in the Partnership Interest, and the purpose of the Debtor's bankruptcy filing including the proposal of a plan of reorganization providing for payment of the monies owed to the Movant.

At the close of the Hearing, this Court took the matter under advisement. Consistent with its obligations under Fed. R. Bankr. P. 7052, this Court provides the following explanation of its reasons for granting the Motion and ordering dismissal of this bankruptcy case.

**FACTUAL BACKGROUND**

Pursuant to an Amended and Restated Agreement of Limited Partnership dated January 23, 2013 (the "Partnership Agreement"),[3] the Debtor and the Movant are limited partners of the Partnership.[4] The Partnership is the owner of certain real property that consists of a 346-unit apartment complex in Lansdale, Pennsylvania (the "Property"). Prior to the execution of the Partnership Agreement, the

---

[3] The Partnership Agreement is an integrated contract governed by Pennsylvania law. Exh. M1, §§14.3 & 14.6.

[4] The Partnership Agreement defines the Movant as the "Class A Limited Partner" and the Debtor as the "Initial Limited Partner."

3

Movant was the owner of a mezzanine loan in the original principal amount of $13,599,302 (the "Mezzanine Loan") issued to the Partnership and secured by, among other things, the Property and the Debtor's interest in the Partnership. The parties entered into the Partnership Agreement for the purpose of facilitating the refinancing of the Partnership's senior indebtedness to Fannie Mae. The effect of the refinancing was a lowered interest rate from 6.44% to 3.71% which resulted in a significant increase in the net operating income of the Partnership as well as the overall value of the Partnership itself.

To accomplish this refinancing, Fannie Mae requested the Partnership to pay off the Mezzanine Loan. However, the Partnership was unable to come up with the funds necessary to pay off the Mezzanine Loan. To allow the refinancing to proceed, the Movant agreed to convert the unpaid principal balance of the Mezzanine Loan into a senior class of preferred equity in the Partnership. As of the date of the Partnership Agreement, the unpaid principal balance of the Mezzanine Loan was $12,621,014.39 (the "Capital Contribution"). Pursuant to §5.1 of the Partnership Agreement, the Capital Contribution constituted consideration for the receipt of the Movant's Class A Partnership Interest in the Partnership. Exh. M1, §5.1.

It appears that the parties intended that the Movant's Class B Partnership position be temporary and did not intend for the Movant to retain its equity position. The Partnership Agreement reflects that the parties contemplated that the Partnership would buyout the Movant's equity interest within six-months of the effective date of the Partnership Agreement. The mechanism for the buyout was set forth in §§6.2(a) and 8.4 of the Partnership Agreement. Section 6.2(a) provides the method of payment by the Partnership for buyout of the Movant's interest. Pursuant to §6.2(a), the Movant was entitled to payment from the Partnership's net proceeds of a "Preferred Return" as "redemption" of its Capital Contribution.[5]

---

[5] Section 6.2(a) reads in relevant part:

> Distribution of Net Proceeds. Net Proceeds shall be distributed as follows:
> (a) First, to the [Movant] (i) in payment of all accrued and unpaid Preferred Return (exclusive of $5,800,000 of such capital contribution), and (ii) in repayment in full of the [Movant's] Capital Contribution and Partnership Interest.

Exh. M1, §6.2(a).

4

Section 8.4 of the Partnership Agreement provides for the redemption of the Movant's equity interest in the Partnership upon the payment of the amounts provided for in §6.2(a) (the "Redemption Payment").[6]

The parties agree that, under the terms of the Partnership Agreement, the Partnership was required to make the Redemption Payment on or before July 23, 2013 (the "Redemption Deadline"), the six-month date after the effective date. Under the terms of the Partnership Agreement, if the Partnership failed to make the Redemption Payment by the Redemption Deadline and without further consideration, the Debtor was obligated to transfer its Partnership Interest to the Movant. To facilitate the transfer of the Debtor's interest in the Partnership, §14.20 of the Partnership Agreement confers upon the Movant a power of attorney to execute certain documents necessary to effect the transfer of the Debtor's equity interest in the Partnership.[7] The Partnership failed to make the Redemption Payment to the Movant by

---

[6] In relevant part, §8.4 reads:

> Redemption of Class A Limited Partner; Termination Events. [The Movant] hereby consents to the redemption of its entire Partnership Interest upon payment to [the Movant] of the amount due under Section 6.2(a). Upon payment to the [Movant] of the amount due under Section 6.2(a) the [Movant] shall surrender its entire Partnership Interest to the Partnership. If *the Partnership* has not redeemed the [Movant's] Partnership Interest in full by payment to [the Movant] of the amount due under Section 6.2(a) *on or before the six (6) month anniversary of the Effective Date* or if any of the following events described in Section 8.4(a) through Section 8.4(k) below occurs prior to such redemption (each, a "Termination Event"), *then the General Partner and the [Debtor] shall transfer their Partnership Interests to the [Movant] without further consideration.*

Exh. M1, §8.4 (emphasis added).

[7] In relevant part, §14.20 reads:

> General Partner and [the Debtor] hereby irrevocably constitute and appoint the [Movant] as their true and lawful attorney-in-fact, with full power of substitution, with such attorney-in-fact having full power and authority in the General Partner's and [the Debtor's] name, pace and stead to complete, date, execute, acknowledge, deliver, swear to, certify, verify, publish, file and record the Transfer Documents to which the General Partner and [the Debtor] are a party if and only if: (i) a Termination Event occurs; and (ii) the [Movant] shall have delivered such fees, documents and agreements to the Lender as may be required by the Loan documents (including, without limitation, a non-recourse carve-out guaranty ("Substitute Guaranty") signed by an Affiliate of the [Movant] ("Substitute Guarantor") to replace General Partner, John M. Dewey and Kenneth C. Dewey as the current non-recourse carve-out guarantors); and (iii) the [Movant] shall have obtained such consents, if any, required to be obtained from the Lender as may be required by the Loan Documents; and (iv) the Lender shall have released General Partner, John M. Dewey and Kenneth C. Dewey from their respective obligations under the Loan documents arising from and after the effective date of the Substitute Guaranty signed by the Substitute Guarantor; and (v) the DCI Parties shall have received: (1) copies of the items submitted by [the Movant] to Lender pursuant to clause (ii), (2) a true, correct and complete copy of the Lender's consent, if any such

5

July 23, 2013. As a result, the Movant began the process of satisfying the conditions set forth in §14.20 of the Partnership Agreement. Once the conditions were satisfied, the Movant would have had the absolute authority to transfer to itself the Partnership Interest. As of the Petition Date, only two conditions remained unfulfilled. First, the Movant had not yet obtained the consent from Berkadia Commercial Mortgage LLC ("Berkadia"), the senior lender, to the transfer of the ownership of the Partnership to the Movant (the "Transfer Consent"). Second, the Movant had not yet obtained the consent of Berkadia to the release of the General Partner, John M. Dewey or Kenneth C. Dewey from the Loan obligations (the "Release Consent," collectively with the Transfer Consent, the "Consents"). Mr. Gaghan testified that Berkadia did not object to providing the Consents, and that, assuming the stay was lifted, Movant could obtain the Consents within one week. Although the Debtor challenged Mr. Gaghan's assessment of Berkadia's position, it provided no evidence to the contrary.

**DISCUSSION**

It is well-settled that a debtor's lack of good faith in filing a Chapter 11 petition establishes "cause" for dismissal. *Sante Fe Mineral, Inc. v. Bepco, L.P. (In re 15375 Mem'l. Corp.)*, 589 F.3d 605, 618 (3d Cir. 2009) (citing *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 119-20 (3d Cir. 2004)). The Bankruptcy Code contains no express requirement that a petition be filed in good faith nor does it define what constitutes a bad faith purpose for filing of a petition. However, courts have found that to be filed in good faith, a debtor's Chapter 11 filing must serve a valid bankruptcy purpose. *15375 Memorial*, 589 F.3d at 618 (*citing SGL Carbon*, 200 F.3d at 165). The valid purposes for bankruptcy petition include the preservation or enhancement of estate assets.

Whether the debtor has satisfied this "good faith" requirement in commencing its case is a "fact intensive inquiry" in which the court will examine the totality of the circumstances to determine where "a

---

consent is required or a certification from the [Movant] that any such consent is not required, and
(3) a copy of the duly executed release described in clause (iv). …

Exh. M1, §14.20.

petition falls along the spectrum ranging from clearly acceptable to the patently abusive." *15375 Memorial*, 589 F.3d at 618 (citing *SGL Carbon Corp.*, 200 F.3d at 162). In connection with the good faith inquiry, the courts have considered multiple factors including the following: (i) whether the debtor has few or no unsecured creditors; (ii) whether there have been previous bankruptcy filings by the debtor or related entities; (iii) whether the pre-petition conduct by the debtor has been improper; (iv) whether the filing permits the debtor to evade or delay court orders; (v) whether there are few debts to non-moving creditors; (vi) whether the petition was filed on the eve of foreclosure; (vii) whether the foreclosure property is the major asset of the debtor; (viii) whether the debtor has an ongoing business or employees; (ix) whether there is no possibility of reorganization; (x) whether the debtor's income is insufficient to operate; (xi) whether there was no pressure from non-moving creditors; (xii) whether the reorganization essentially involves resolution of a two-party dispute; (xiii) whether the corporate debtor was formed and received title to its assets immediately before the petition; and (xiv) whether the debtor filed solely to obtain the protection of the automatic stay. *In re Stingfree Technologies Co.*, 427 B.R. 337, 352 (E.D. Pa. 2010) (quoting *In re SB Properties, Inc.*, 185 B.R. 198, 205 (E.D. Pa. 1995)).

Examining the facts of this case, this Court has determined that factors (i), (v), (vi), (vii), (viii), (xi), (xii), and (xiv) weigh in favor of a finding that the petition was not filed in good faith because there is not a valid reorganization purpose.[8] Rather, the record reflects that the Debtor's Chapter 11 petition was filed solely to prevent the transfer of the ownership of the Partnership, inclusive of the Debtor's Partnership Interest, to the Movant. The fact that a petitioner desires to invoke the Code's distributional mechanisms to distribute estate assets to a different party is not a valid bankruptcy purpose. *In re Integrated Telecom Express, Inc*, 384 F.3d at 108 ("[A petition] must seek to create or preserve some value that would otherwise be lost-not merely distributed to a different stakeholder-outside of bankruptcy."). An absence of a valid bankruptcy purpose will generally disqualify a petitioner from

---

[8] This Court will limit its discussion to these factors. As for the omitted factors (ii), (iii), and (iv), this Court determines that each is either irrelevant or of neutral weight to its consideration of the good faith issue.

7

invoking the jurisdiction of this Court. *In re Forever Green Athletic Fields, Inc.*, 500 B.R. 413, 424-25 (Bankr. E.D. Pa. 2013).

### Factor I & V- The Debtor's Creditors

This Court finds that the Debtor has few or no unsecured creditors (factor one) and there are few debts owed to non-moving creditors (factor five). These factors weigh strongly in favor of a finding of bad faith. As admitted by the Debtor in its schedules, the Movant is the Debtor's only unsecured creditor. Even considering the Debtor's claims register, this Court must conclude that the Movant is the Debtor's only significant creditor accounting for greater than 98% of the Debtor's indebtedness. *In re Adell*, 332 B.R. 844, 849 (Bankr. M.D. Fla. 2005) ("With only one 'real' creditor, there is little competition for the Debtor's assets, no race to the courthouse, and no need to employ the automatic stay to ensure an equitable and orderly distribution of the Debtor's assets"); *In re Primestone Investment Partners L.P.*, 272 B.R. 554, 558 (D. Del. 2002).

This Court finds the Debtor's situation to be similar to that of the debtor in *Primestone*. In that case, the District of Delaware upheld the bankruptcy court's determination that the debtor's petition should be dismissed because it was filed "to disadvantage its sole secured creditor." The *Primestone* debtor was a Delaware limited partnership that existed to hold ownership shares in a real estate trust. The debtor had obtained a $62 million loan that was secured by its interest in the real estate trust. When the *Primestone* debtor failed to make payment on the loan, its creditor treated it as an event of default which ultimately led to the creditor arranging for the auction of the debtor's interest in the real estate trust. Sixteen hours prior to the auction, the *Primestone* debtor filed for chapter 11 bankruptcy relief. Explaining the rationale of the bankruptcy court, the district court stated:

> The bankruptcy court found that Primestone was adequately protected by its bargained for contractual rights under state law and that it would be inappropriate to arm Primestone with the powers of Chapter 11 to disadvantage its sole creditor… The bankruptcy court did not abuse its discretion is so concluding.

*Id.* at 558.

Here, the parties occupy almost identical positions. The Debtor's sole asset is its interest in the Partnership that, due to the Partnership's failure to make the Redemption Payment in accordance with the terms of the Partnership Agreement, the Movant now claims for itself. The rationale underlying the *Primestone* decision is equally applicable to the respective contractual rights of the Debtor and the Movant. Just as in *Primestone*, this Court must conclude that the parties are adequately protected by their bargained for contractual rights embodied by the terms of the Partnership Agreement. When the interests of no other creditors would be benefited, to allow the Debtor to escape its bargain is an inappropriate use of the bankruptcy system.

### Factor VI & VII - Petition Filed on the Eve of the Transfer of the Debtor's Only Asset

This Court finds factors six and seven to weigh strongly in favor of a finding of bad faith. The Debtor's only asset of any significance is the Partnership Interest, and immediately prior to the Petition Date, the Movant was in the process of causing the transfer of the Debtor's Partnership Interest. Typically, cases addressing this factor do so in the context of pending foreclosure proceedings. While the Partnership Interest is not subject to foreclosure or even a pending litigation, this Court observes that outside the bankruptcy context the Debtor would be powerless to prevent the transfer of its Partnership Interest to the Movant. The fact that a debtor files for bankruptcy to prevent the consummation of a pending foreclosure does not mandate a finding that a petition was filed in bad faith. To the contrary, such proceedings are exactly the type of proceedings that motivated Congress to create the alternative of the bankruptcy system. *See, e.g., U.S. v. Nicolet, Inc.*, 857 F.2d 202, 206–07 (3d Cir. 1988) (discussing Congress intent to prevent an unfair "race to the courthouse" and provide a debtor "breathing room" required to maximize the return to all its creditors). While the Debtor was motivated to forestall the proverbial race to the courthouse and the concomitant breathing room, the Debtor was not motivated to use the bankruptcy process to assist its non-moving creditors. The Debtor availed itself of the benefits of bankruptcy's breathing spell to benefit its equity holders and prevent their equity interest in the Partnership Agreement from transferring to the Movant pursuant to the express terms of the Partnership Agreement. In this case, the application of the automatic stay will not forestall a zealous creditor to

9

ensure the fair distribution of the Debtor's assets among its creditors. *Adell*, 332 B.R. at 849. The application of the automatic stay will not have the effect of leveling the playing field among competing creditors. *See, e.g., In re PPI Enterprises (U.S.), Inc.*, 228 B.R. 339, 346-47 (Bankr. D. Del. 1998). Rather, it will empower the Debtor against the Movant in their ongoing dispute as to the ownership of the Partnership. That dispute should be settled by reference to the terms of the Partnership Agreement and without the ability of one faction to avail itself with the benefits of bankruptcy to the detriment of the other faction.

### Factor VIII - The Debtor Lacks an Ongoing Business

This Court finds this factor weighs strongly in favor of a finding of bad faith. The Debtor is not an operating business. The only significant asset that the Debtor owns is its interest in the Partnership which in turn owns the Property. *See, e.g., In re SB Properties, Inc.*, 185 B.R. 198, 205 (E.D. Pa. 1995); *In re Davis Heritage GP Holdings, LLC*, 443 B.R. 448, 458-59 (Bankr. N.D. Fla. 2011) (determining entity that held no assets other than interests in real estate companies "does not own anything that it can reorganize").

### Factor XI - Pressure from Non-Moving Creditors

This Court finds this factor to weigh strongly in favor of a finding of bad faith. The Debtor has provided no evidence that its filing for Chapter 11 relief was motivated to deter the collection efforts of any non-moving creditor. The Debtor's bankruptcy schedules make reference to only one other creditor and does not even identify the amount allegedly owed to this entity. There is no evidence that any of these creditors made demand upon, or exerted any pressure for payment on the Debtor prior to the bankruptcy filing.

### Factor XII - The Reorganization Essentially Involves the Resolution of a Two-Party Dispute

This Court finds this factor also weighs strongly in favor of a finding of bad faith. Prior to the Petition Date, the Debtor and the Movant were involved in a dispute over the ownership of the Partnership. The Debtor concedes that "the Movant and the Debtor are engaged in a dispute…" and that it seeks "an opportunity to efficiently reorganize its affairs without the attendant distraction of legal action

over the transfer of the Debtor's Interest." Objection, ¶¶49 & 52.  To avoid the obvious conclusion that this bankruptcy is merely the extension of two-faction dispute over the ownership of the Partnership, the Debtor characterizes its bankruptcy as affecting the rights of a significant number of parties.  However, the mere fact that the resolution of a two-party dispute may affect the interests of the principals of the Partnership and the Debtor does not transform a two-party dispute into a multi-party dispute.  Although typically addressed in the context of involuntary bankruptcies, the Debtor's attempt to have this Bankruptcy court intervene in a dispute over the control of the Partnership is widely recognized as an invalid bankruptcy purpose.  *Jaffe v. Wavelength, Inc. (In re Wavelength, Inc.)*, 61 B.R. 614, 619 (9th Cir. BAP 1986) (filing bankruptcy without proper authorization on behalf of the corporation by one faction of owners/directors who were dissatisfied with a state court corporate dissolution proceeding pursued by other faction was improper use of bankruptcy); *In re Commonwealth Securities Corp.*, Bky. No. 06-30746, 2007 WL 309942, *3 n.6 (Bankr. N.D. Tex. Jan. 25, 2007) ("generally courts can find improper the use of the bankruptcy mechanism in cases of two-faction disputes over control of an entity."); *In re ELRS Loss Mitigation*, *LLC*, 325 B.R. 604, 633 (Bankr. N.D. Okla. 2005) ("the only real effect of an involuntary bankruptcy would be to wrest control of Loss Mitigation away from Vargas"); *In re Better Care, Ltd.*, 97 B.R. 405, 412 (Bankr. N.D. Ill. 1989) (petitioner was "attempting to obtain control of the Better Care corporation").

### Factor IX - Possibility of Reorganization

This Court finds this factor to weigh strongly in favor of a finding of bad faith.  Although the Debtor has yet to file its proposed plan of reorganization, the Debtor has represented to this Court that any proposed plan would allow for the Redemption Payment to be made to the Movant thereby allowing the Debtor to retain its "equity" in the Partnership, presumably for the benefit of the Debtor's creditors.  Objection, ¶80. The Debtor argues that it filed bankruptcy to enable the exercise of the redemption rights provided by §8.4 of the Partnership.  This Court finds two flaws in this alleged purpose.  First, the Partnership Agreement does not impose upon the Debtor the obligation to make the Redemption

11

Payment. Second, by the express terms of the Partnership Agreement, the right to redeem expired on July 23, 2013, twenty-eight days prior to the Debtor's filing for Chapter 11 relief.

While Mr. Dewey did testify that he is aware of ongoing efforts to secure funding to make the Redemption Payment and that it is his belief that such funding will become available within the Debtor's exclusivity period, Mr. Dewey and the Debtor's other representatives conveniently brush over the identity of the party who would make the Redemption Payment. The Debtor acknowledges that it is under no obligation to make the Redemption Payment.[9] To the extent any party was obligated to make the Redemption Payment, that obligation belonged to the Partnership. The Debtor seeks to propose a plan that will afford the Partnership, *a nondebtor party*, the opportunity to perform its contractual obligation. Objection, ¶80 ("The Debtor has a valid reorganizational purpose… to facilitate the [Partnership's] redemption of the Movant's Interest."). This Court can conceive of no provision of the Bankruptcy Code that would allow the Debtor to revive an expired contractual right *on behalf a nondebtor party*. *In re Davis Heritage GP Holdings, LLC*, 443 B.R. 448, 462 (Bankr. N.D. Fla. 2011) ("Chapter 11 was not designed for the purpose of protecting assets and interests of non-debtor parties under the guise of a legitimate plan of reorganization."). The Code provides no mechanism for the Debtor to cure the Partnership's failure to make the Redemption Payment. *See, e.g., COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 381-82 (2d Cir. 2008) (addressing when a contract may be assumed or rejected); *In re Parks*, 227 B.R. 20, 23 (Bankr. W.D.N.Y. 1998) (recognizing that a debtor has

---

[9] The Debtor premised part of its Objection on its argument that the Movant does not have standing to seek dismissal because the Movant does not hold a right to payment from the Debtor and therefore is not the holder of a claim against the Debtor's estate. *See, e.g., In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 305 (3d Cir. 1999) (holding that a claim for reinstatement into a partnership agreement is not a claim when the partnership was comprised of a unique business opportunity not capable of valuation). The Court need not determine whether the Movant has standing as the bad faith inquiry is contained within this Court's consideration of its jurisdiction. *See, e.g., In re Integrated Telecom Express, Inc.*, 384 F.3d at 108 (stating that the provisions of the Bankruptcy Code are to be invoked only after a case has been filed with a legitimate bankruptcy purpose); *In re African Union First Colored Methodist Protestant Church*, 184 B.R. 207, 222 (Bankr. D. Del. 1993) ("A bankruptcy court as a court of equity has the inherent power to dismiss a case when its jurisdiction has been improperly invoked."). Because the issue of this Court's jurisdiction may be considered *sua sponte*, this Court does not consider the issue of the Movant's standing determinative of this Court's authority to consider whether its jurisdiction was properly invoked. *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (recognizing the threshold question in every federal case is a court's jurisdiction); *Lunderstadt v. Colafella*, 885 F.2d 66, 69 (3d Cir. 1989) (recognizing a court *must* consider its own jurisdiction).

no right to cure a third party's default); *In re Hubbard*, Bky. No. 89-40184, 1990 WL 10625271 (Bankr. S.D. Ga. Mar. 27, 1990) (recognizing that debtor has no right to cure nondebtor default). Accordingly, this Court concludes that the Debtor's proposed plan is unconfirmable. 11 U.S.C. §1129(a)(1) (requiring plan to comply with Bankruptcy Code).

Compounding matters, the Partnership's right to make the Redemption Payment has expired. Under the terms of the Partnership Agreement, the Movant was to surrender its Class A Partnership Interest if it received the Redemption Payment on or before July 23, 2013. If the Redemption Payment was not made on or before July 23, 2013, the Partnership Agreement provided the Debtor "shall transfer [its] Partnership Interest to the [Movant] without further consideration." Exh. M1, §8.4. By agreeing to convert its secured interest to an equity position, the Movant conferred a benefit upon the Partnership and its partners including the Debtor (the "Partnership Parties"). As acknowledged by Mr. Dewey, the refinancing resulted in a significant increase in the net operating income of the Partnership as well as a significant increase in the overall value of the Partnership. Just as the Partnership Parties received the benefits of the bargain that is memorialized by the terms of the Partnership Agreement, the Movant is now entitled to the benefits that should accrue to it. The Debtor may not use the automatic stay, or the bankruptcy process generally, to expand the Partnership Parties' contractual rights or to deprive the Movant of its bargained for interests. *In re Majestic Star Casino, LLC*, 716 F.3d 736, 759 (3d Cir. 2013) (recognizing that Congress did not intend the Code to expand a debtor's rights beyond those existing as of the commencement of the case); *The Resolution Trust Corp. v. Swedeland Development Group, Inc. (In re Swedeland Development Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) (recognizing that a prepetition creditor is entitled to retain the benefit of its prebankruptcy bargain); *In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1091 (3d Cir. 1990) (same); *In re Washington Capital Aviation & Leasing*, 156 B.R. 167, 173 (Bankr. E.D. Va. 1993) ("since no expansion of either party's rights is intended by §365 except as specified therein, this court's exercise of equity power pursuant to 11 U.S.C. §105(a) to expand the debtor's rights would not be appropriate."); *In re Jackson*, 105 B.R. 418, 419 (Bankr. S.D. Oh. 1989) (same); *In re International Supply Corp. of Tampa, Inc.*, 72 B.R. 510, 511 (Bankr. M.D. Fla. 1987)

(granting relief from automatic stay when the debtor's interest in property expired prepetition pursuant to an enforceable agreement).

Contrary to the Debtor's arguments, the filing of a bankruptcy petition does not "expand the debtor's rights against others more than they exist at the commencement of the case." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984); *see also Bank of Marin v. England*, 385 U.S. 99, 101 (1966) (recognizing the estate "succeeds only to such rights as the bankrupt possessed; and the trustee is subject to all claims and defenses which might have been asserted against the bankrupt but for the filing of the petition"); *In re Triangle Laboratories, Inc.*, 663 F.2d 463 (3d Cir. 1981) (recognizing that the filing of a bankruptcy petition cannot resuscitate expired contractual rights). The Debtor's estate does not include any contractual rights that expired prior to the filing for Chapter 11 relief and it certainly does not include the Partnership's expired contractual rights. *In re Quade*, 482 B.R. 217, 225 (Bankr. N.D. Ill. 2012) ("contractual rights that have expired by their own terms… are not subject to revival").

The Debtor has not argued that the Partnership Agreement is void, voidable or otherwise unenforceable. Rather, the Debtor is requesting this Court to revive the Partnership's expired contractual rights. The right to make the Redemption Payment expired, according to the Partnership Agreement's express terms, as of July 23, 2013. In effect, the Debtor is asking this Court to rewrite the terms of the Partnership Agreement on behalf of a nondebtor party. The Debtor has cited no authority, whether within the Code or applicable nonbankruptcy law, that would allow this Court to grant such relief.

Although the Debtor did its best to confuse the issue, the issue dividing the parties is not whether the Debtor or the Partnership enjoys the benefit of an equity cushion. *See, e.g., In re Swedeland Development Group, Inc.*, 16 F.3d at 566 (addressing whether he presence of an equity cushion constitutes sufficient adequate protection). The parties do not dispute that the Partnership may hold equity in the Property. The dispute is simply which party is entitled to ownership of that equity. This dispute may be settled by reference to the express terms of the Partnership Agreement. If the Debtor believes that it is not required to transfer its interest in the Partnership to the Movant, the Debtor is free to have that dispute adjudicated by a court of general jurisdiction.

### Factor XIV - The Debtor Filed Solely to Obtain the Protection of the Automatic Stay

This Court finds this factor to weigh strongly in favor of a finding of bad faith. Courts have observed that a classic example of an abusive bankruptcy filing involves a debtor's attempt to obtain an injunction or restraining order that would not be otherwise available to the Debtor. *See, e.g., In re Integrated Telecom Express, Inc.*, 384 F.3d at 128. The Debtor admits that it filed for bankruptcy relief to stop the Movant's efforts to cause the transfer of the Debtor's Partnership Interest. Objection, ¶¶49 & 52. Significantly, the Debtor does not control whether the Movant will be able to obtain the Consents. All evidence indicates that, absent the imposition of the automatic stay, the Debtor lacked any means to stop the Movant from causing the transfer of the Debtor's equity interest in the Partnership. Absent the Debtor's decision to file for Chapter 11 relief, the Movant would be free, within its sole discretion and according to the express terms of the Partnership Agreement, to cause the transfer of the ownership of the Partnership to itself. The Debtor may not use the automatic stay to frustrate the Movant's efforts to realize the benefits of its bargain. If the Debtor believes that the Movant is not entitled to the Debtor's performance of the Partnership Agreement, the Debtor is free to advance its case in a court of general jurisdiction. If merited, that court may grant an injunction to prevent the Movant from exercising its contractual rights. Absent a valid bankruptcy purpose, the Debtor may not use the Bankruptcy Code to circumvent the normal procedural requirements associated with a request for injunctive relief. *See, e.g.,* Fed. R. Civ. P. 65; *In re Prudential Lines, Inc.*, 107 B.R. 832, 835 n.4 (Bankr. S.D.N.Y. 1989) (noting that "[w]here an act would violate the automatic stay, irreparable harm is established by the violation since Congress, by legislatively staying such acts, has determined that they cause irreparable injury to the estate.").

### CONCLUSION

As stated above, this Court finds that the Debtor did not file its bankruptcy in furtherance of a valid reorganizational purpose. The Debtor did not file for Chapter 11 relief for the purpose of maximizing property available to creditors. Rather, this Court finds that the Debtor filed its bankruptcy for the purpose of frustrating the Movant's efforts, in accordance with the terms of the Partnership

Agreement, to transfer to itself ownership of the Partnership.  On this basis, the Movant's request to dismiss Debtor's bankruptcy case will be granted.

Dated:  December 16, 2013

MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE

Corinne S. Brennan, Esquire
Jeffrey Kurtzman, Esquire
Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, PA  19103

Michael H. Reed, Esquire
Erik L. Coccia, Esquire
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799

Beverly W. Manne, Esquire
Tucker Arensberg, P.C.
1500 One PPG Place
Pittsburgh, PA 15222

Kevin P. Callahan, Esquire
United States Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA  19107

Courtroom Deputy
Eileen Godfrey